# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# EVANSVILLE DIVISION

Civil Action No.  3:21-cv-00095-RLY-MPB

(To be supplied by the Court)

**Clyde N. Kelley III**
        **Plaintiff**

v.

**Doug Huyvaret,**
Former Director of Parole Services
**Jack Ross,**
Special Parole Agent (SPA)
**Charles Whallon,**
Former Special Parole Agent (SPA)
**Ronald Leffler**
Former Deputy Compact Administrator and Extradition Coordinator
        **Defendant(s)**
*In their Individual & Official capacity.

**FILED**

**06/10/2021**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

# CIVIL RIGHTS COMPLAINT

## I. PARTIES

1. **Plaintiff's Information**:

Name and Prisoner Number of Plaintiff: Clyde N. Kelley III (hereinafter Kelley) Doc #:204308

Present Place of Confinement: Branchville Correctional Facility,

21390 Old State Road. 37, Branchville, Indiana 47514

2. **Defendant's Information**:

**Name of Defendant 1: Doug Huyvaret**

Title: Former Director of Parole Services

Address of Defendant: Division of Parole

Indiana Government Center South – Room W341, 302 West Washington Street

Indianapolis, Indiana 46204

**Name of Defendant 2: Ronald Leffler**

Title: Former Deputy Compact Administrator and Extradition Coordinator

Address of Defendant: Indiana Department of Corrections

Indiana Government Center South – Room E334, 302 West Washington Street

Indianapolis, Indiana 46204

**Name of Defendant 3: Jack Ross**

Title: Parole Agent (SPA)

Address of Defendant: 1110 MSH 2nd Street, Madison, Indiana 47250

**Name of Defendant 4: Charles Whallon**

Title: Former Parole Agent (SPA)

Address of Defendant: 1110 MSH 2nd Street, Madison, Indiana 47250

## III. BASIS FOR CLAIMS

Check any Applicable Item(s):

☒ Complaint under the Civil Rights Act, **42 U.S.C. § 1983** (state, county, or municipal Defendants)

☐ Complaint under *Bivens v. Six Unknown Federal Narcotics Agents*, **403 U.S. 388 (1971)** (federal defendants)

☐ Other (cite statute, if known) _____

## IV. CLAIMS

Kelley's claim, alleging that the above mentioned Defendant(s) in whole or part, did in fact violate his Fifth (5th) and Fourteenth (14th) Amendment Rights in their individual and official capacity. In violating Kelley's Due Process Rights the Defendants used Libel, Deceit, Slander, Forgery, and Defamation. With the sole intent of laying all blame at Kelley's feet, in their attempt to cover up their departmental mistakes and/or negligence.

### BACKGROUND:

On August 10th 2009 Clyde N. Kelley III entered into a plea agreement for a Class B offense that occurred on September 6th 2001. The plea agreement stated Kelley would serve a 15 Year fixed term sentence that would run concurrently with the sentence Kelley was already serving in Kentucky a twelve (12) year sentence.

At the time of these events, and up until 2017 Kelley had never signed an interstate compact for Indiana to Kentucky, or from Kentucky to Indiana, or an Indiana Parole Release Agreement. On November 2014 Kelley made parole at Luther Luckett Correctional Complex in LaGrange, Kentucky, and per Kentucky parole procedure, this was sixty (60) days in advance as to give Kelley ample time to find a home placement, and work with case managers on His re-entry plan. Kelley continually asked His then case-manager to please put in an Interstate Compact Agreement for Adult Offenders, (I.C.A.O.S) so that He could go to Hawaii and live with His mother (Tameria Kelley-Cobbin) who at that time had a job lined up for Him, and this was his greatest chance not to recidivate. The Interstate Compact never happened while Kelley was still incarcerated awaiting His release.

January 2nd 2015 Kelley was released and transported to a half-way house in Louisville, Kentucky (Dismiss Charities). Upon His initial meeting with His parole officer Kelley) was told to contact Madison Parole office (District Nine). Kelley contacted Madison Parole Office, talking with a Spa. Charles Whallon. Kelley was told to report immediately! Kelley had to then explain that He was in fact in Louisville, Kentucky, and also that He did not even know where Madison, Indiana was, or how he could possibly get there. Kelley was then told by Spa. Charles Whallon that he had in his files that Kelley would like to go to Hawaii and that he would get the compact initiated.

The last time Kelley heard from Spa. Charles Whallon was on/or about February 2015. At that time Kelley was told to stay in Kentucky and do as Kentucky tells Him to do, while He awaited His interstate compact to Hawaii to be approved.

Kelley was released from parole on April 27th 2015, on Kelley's monthly visit to His parole officer (Kate Greer), Kelley did not know at that time that all His time cuts had come back and His Kentucky parole was up. It was from her that Kelley learned that His parole time was up, and according to her records both His transfers to Hawaii had been denied and that Indiana never attempted to initiate and Indiana-Kentucky Interstate Compact. Thereby the jurisdiction fell to Kentucky and they were letting Kelley off of parole. Kelley was given a certificate for His completion of parole as well as a letter stating that Kelley was being released from parole. Kelley was told good luck and to stay out of trouble. At this point Kelley hadn't heard anything from Indiana for almost a month and a half.

In the coming months May thru November 2015 Kelley lived in Louisville Ky. His then fiancés health continued to decline due to Ovarian Cancer. So He made the decision to move her back to Fort Wayne, In. where she was from and would have the support of doctors she was more

accustomed and comfortable with, and so that She could be around her family. On November 16th 2015 Kelley registered at the Allen County's Sheriff's Office. Kelley was told that His address wasn't good that Kelley would have to move so Kelley complied. Kelley had several positive interactions with the Allen County Sheriff's office before his December 3rd 2015 warrant.

On December 3rd 2015 Kelley was arrested on a parole violation "Failure to report as instructed." Spa Jack Ross had taken over His file and issued a warrant for his arrest for failing to report as instructed. As Spa Ross understood from the case notes Spa Whallon had left Kelley had absconded and had been on the run. Spa Ross said that he conducted an investigation and his investigation led him to report Kelley registered on April 1, 2015 in Fort Wayne, Indiana.

Kelley was subsequently was let back on parole and deemed a last chance offender. In February 2016 Kelley was picked up at his residence. A hotel now, being told by new parole officers that he could not stay at his address already approved by the sheriff's office and said to meet all requirements of the registry. On April 2016 Kelley was found guilty of a parole violation and sent to New Castle Correctional Facility. Kelley stayed there one year and after hiring an attorney (Daniel G. McNamara) Kelley was granted parole on April of 2017.

Kelley wrote to Doug Huyvaret on or about May of 2019, and received a letter back dated June 13, 2019. Showing documents Kelley did not sign i.e. conditional parole release agreement. Kelley seeing that his name had been spelled wrong and forged, then started his documents for a State Habeas Corpus.

## Claim I:

On January 2nd 2015 Kelley was paroled by Kentucky, having already been paroled by Indiana on January 30th 2014, Kelley had made it aware that He would like to interstate compact to Hawaii to live with his Mother (Tameria Kelley-Cobbin) to better his chances at success after

being incarcerated. This fact was made known both to Kentucky and Indiana even before his release and can be verified through the emails enclosed from Spa Charles Whallon and Deputy Compact Administrator, Ronald Leffler (Exhibits 5A & 5B). Kelley's Interstate Compact was subsequently denied for reason Hawaii Parole stated as: *"we have not received the signed parole documents. We have not received the documents to make an accurate decision."* (Exhibit 1) At the time of the second denial Kelley was still living in Louisville Kentucky and still on parole in Kentucky, having being released from a Kentucky prison (Luther Luckett Correctional Facility). Kelley talked only a few times to Spa Charles Whallon, one being his initial conversation on January 5, 2015. Upon his release Kelley called the number given to him on the "Initial" meetings paper, while he was incarcerated at Green River Correctional Complex in Kentucky. Spa Whallon told Kelley at that time to immediately come to Madison, Indiana to report, Kelley had to explain that he was in fact in Louisville, Kentucky at a halfway house and did not even know how to get to Madison Indiana (not having ever visiting Madison) or have a way to get there. In fact Kelley even asked Spa Whallon if he could catch the bus, just to comply. It was figured out by the adjoining Parole offices that Kelley would remain in Kentucky awaiting an ICOTS that would be put in so that he may go to Hawaii and be with his mother. Spa Whallon told Kelley this; *"an interstate compact was in to Hawaii and to stay in Kentucky and also to do as Kentucky tells you to do."* Kelley was never instructed by Spa Whallon to stay in constant contact, verbally or on correspondence instruction, or even that he would be calling to check up on him. On April 27th 2015 Kelley was released from His Kentucky parole obligation, at that time Kelley asked his then Parole officer (Kate Greer) about his Parole in Indiana and was told that Indiana had not been in touch with Kentucky *"in some time, that no Interstate Compact was in or even pending and that Kentucky was letting you go."* It is a fact that no Interstate Compact had been attempted after the

last failed one to Hawaii on March 10th 2015. At this time there was no Interstate Compact pending from Kentucky to Indiana, or one from either state (Indiana or Kentucky) to Hawaii, this was April 27, 2015.

Indiana failed to enter into another Interstate Compact with Hawaii, and did not ever attempt to enter into one with Kentucky, although in every conceivable document Indiana Parole presented by its agents claimed that they had an interstate compact or that one was pending. The conclusion that arose was by Spa Jack Ross, the Agent that took over Kelley's case file after Spa Whallon. Spa Ross came to the conclusion that Kelley violated Rule #10 of the Conditional Parole Release Agreement[1]: Failure to Report as Instructed. Kelley as a fact was never instructed. Kelley was only instructed once by a document entitled:

"Reporting Instructions" (Exhibit 6B)

> *"On the first business day of release establish contact with the Madison Parole Office at telephone number... to schedule your initial interview."*

This was done. factually. To say that Kelley violated a rule 10 violation is incorrect. Spa Ross was referring to the document Conditional Parole Release Agreement. (State Form 23R) under Rule 10 titled "Communication and Special Instruction" (Exhibit 6C) it states:

> *"I agree to report to my supervising officer as instructed and to respond to any and all communications from any authorized employee of the Department of Corrections. I will abide by any special conditions imposed by the Indiana Parole Board which have been reduced to writing and included as a condition of my parole."*

---

[1] A list of special instructions given to Offenders exiting the IDOC and are used to hold a guideline until you meet with your Parole Officer and sign your traditional parole agreement.

This specific instructions refers to any special condition being reduced to writing, Indiana Parole i.e. Spa Whallon never told Kelley to report after the initial, plainly no instruction was given to Kelley outside of the initial instructions and as a fact Kelley will later prove that Spa Whallon was inattentive and negligent in his duties as an Indiana Parole Agent. Leading to Kelley's ultimate denial of his Due Process Rights.

If Kelley in fact had an Interstate Compact, as continually stated then there are several rules that Indiana did not follow, when the ICAOS give little to no latitude in its action or inaction of these rules and procedures.

It defines in the ICAOS Rules: General Information Manual under Rule 1.101 Definitions the word *"Rule"* to mean:

> *"Acts of the Interstate Commission, which have the force and effect of law in the Compacting States, and are promulgated under the ICAOS, and substantially affect interested parties in addition to the Interstate Compact."*

It also defines the word *"Shall"* to mean:

> *"that a state or other actor is <u>required</u> to perform an act, the non-performance of which may result in the imposition of sanctions as permitted by the Interstate Compact for Adult Offender Supervision, its by-laws and rules."*

The Indiana Parole Division used ICAOS rules in its documentation i.e. Parole case notes to say that Kelley was not allowed to come to Indiana from Kentucky through a Kentucky/Indiana Interstate Compact. A compact that never existed or was ever attempted, until Kelley's release from an Indiana Prison (New Castle Correctional Facility) May 29, 2017. If Kelley had, had a Compact and absconded from his Parole on April 1st 2015 or later as the date was changed to

reflect his parole release date April 27th 2015, as stated in Official State documents. Spa Whallon with his monthly Parole Case Notes would have seen that Kelley had been released, on at least one of the documented parole case note entries, or if Kentucky had ever received an interstate compact, Kentucky Parole would have no doubt followed ICAOS Rule 4.112(c)(d): *Closing of Supervision by Receiving State*

> *(c) At the time a receiving state closes supervision, a case closure notice shall be provided to the sending state, which shall include last known address and employment. The receiving state shall transmit a case closure notice within 10 business days after the maximum expiration date. (d) The sending state shall submit the case closure notice reply to the receiving state within 10 business days of receipt."*

This ICAOS Rule was not the only rule Disregarded by Indiana at the expense of Kelley's rights ICAOS Rule 4.102: *Duration of Supervision in the Receiving State:*

> *"A receiving state shall supervise an offender transferred under the interstate compact for a length of time determined by the sending state".*

Or Rule 4.101: *Manner and Degree of Supervision in Receiving State:*

> *"A receiving state shall supervise an offender transferred under the Interstate Compact in a manner determined by the receiving state and consistent with the supervision of other similar offenders sentenced in the receiving state."*

Had Indiana initiated and received an Interstate Compact and followed the ICAOS Rules Kelley would not have been released erroneously or otherwise. Kelley made no attempt to hide from parole or make his presence unknown to any law enforcement agency. Kelley was registered at this time and even worked as a welder, having his address always on file per registry

requirements. Indiana Parole had sufficient time and opportunity to secure an Interstate Compact, or to correct any mistakes from previous ones before Kelley moved from Louisville, Kentucky and after he was in Fort Wayne, Indiana. Indiana parole chose not to do so, or rather send an Interstate Compact to Hawaii without the proper information i.e. signed parole stipulations, not once but twice. Indiana also said that Kelley had a duty per his plea agreement to return to Kentucky to serve his parole, this was another fabricated statement, as Kelley's plea agreement does not speak of this obligation, or any other obligation in this manner or any other manner for that matter. This duty was never told to Kelley at any time during his parole or even the one time Kelley talked to his Indiana parole officer, Whallon. No statute or rule speaks of this, nor can Indiana parole Services Department reflect any document that it exist or that I was even told so how then was Kelley to know? Kelley created a packet detailing these findings and had his mother send it to the former Director of Parole Services, Douglas J. Huyvaret, the packet stated completely the facts of this, and a return letter was sent to Mr. Kelley on June 13, 2019 from former Director Huyvaret (Exhibit 6A) acknowledging that Indiana did not have signed Parole conditions sent with the Interstate Compact *"Your Indiana request was denied due to Indiana not having signed the signed parole conditions sent with the request..."* former Director Huyvaret states that after nobody else could find these parole conditions, he was able to after 4 years. This was the last information that I received from the parole services department. If Indiana did not have any parole conditions signed by Kelley not once but twice, and Former Director Huyvaret sent two (2) documents one was the Initial Reporting Instructions, and the other Conditional Parole Release Agreement, to which Kelley only signed one, the Initial Reporting Instructions, and the copy Former Director Huyvaret sent was in fact not Kelley's signature, and his last name was spelled wrong. The Conditional Parole Release Agreement that was also sent was not signed by Kelley in fact being a complete

forgery. This is the same document that was not sent to Hawaii twice, then four (4) years later it turns up signed, but with Kelley's last name is spelled wrong (Kelly).

Kelley was asking for relief in the matter of parole, due to the fact that there was never an interstate compact, for any state initiated by Indiana, by this reasoning Kelley was in fact no longer on Indiana parole due to the lack of an Interstate Compact, that once released from parole by Kentucky, the lack of compact and the significant and noteworthy efforts to undermine Kelley's character, the fabrications by Indiana Parole and its Agents, and the attempts to conceal this situation, at the expense of Kelley and his freedom, at the very least warranted a release of Parole, given the absolute facts. Kelley was called an absconder of parole, stating that he attempted to run, Kelley was told that Kentucky didn't have the authority to let him off parole, also not instructing Kelley in what had to be done if released from parole as they had in his release from prison, but then blaming Kelley for not knowing. Kelley was told that he would be place back on parole, and that, he would be place on a type of parole stipulation called "last chance basis" a placement Indiana uses for all its Parolee's that have had trouble abiding to listed rules. Never once did Indiana Parole take responsibility for their actions or lack thereof, or reprimand any of its agents for the gross negligence and dereliction of duty that incurred or offer to Kelley an apology of any sorts. I.D.O.C and its agents, The Parole Board and the Parole Services Department, simply blamed Kelley as if it was all his fault, believing that the truth would never come to the light. Believing that they could infringe on his rights and because he is a convicted felon nobody would hear him.

In certain instance's this has been called "waiver of jurisdiction" or the "Waiver Theory." It is said that the "waiver theory encourages responsibility and accountability on the part of the [State] to the extent that it deters the arbitrary exercise of their power. In addition, the theory

encourages the prompt rehabilitation of defendants. It is based on the philosophy that a defendant should be allowed to do his time, live down his past, and reestablish himself." Permitting a sentence to go unexecuted does not encourage rehabilitation". *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930) quoting *Shelton v. Ciccone* 578 F.2d 1241; 1978 US App. Clearly this is an arbitrary use of not just one person's power but the use of a department's power, because the only person to oppose their action is in fact a convicted felon with little to know voice in his own hearings. Kelley attempted to gain access to his previous parole hearings video, to show this court the way he was treated according to Spa Ross's parole case notes, only to be told that the hearing's sound system was not working on that particular day. This was Kelley's attempt to show that no matter how a parolee denies an allegation led against him, the parole board does not hear the parolee, what is believed is the Spa's case notes, thereby leading the parole board to say that the parolee is not showing accountability, or simply lying to them because the Parole agent wrote differently in their notes.

In *Lanier v. Williams*, 361 F. Supp. 944, 946 (E.D.N.C. 1973) it was said in United States District Court for the Eastern District of North Carolina, Raleigh Division that. "Once the state, through acts or omissions of its officials, has led a person, through no fault of his own, to believe that he is free of a prison sentence, and makes no attempt for a prolonged period of [time] to reacquire custody over him, that person should be able to rely on the state's action or inaction and assume that further service of the sentence. The state should not later be heard to assert a right to custody over the person whom it has so misled, and to permit the state to do so offends the Due Process Clause of the Constitution. This court is of the opinion that the State...has waived its right to any further jurisdiction and custody over the petitioner in regard to the sentences..."

It is understood that, "it is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in the aftermath of such action or inaction." *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973) Kelley asserts that this case has all the elements of official misconduct as well as being affirmatively wrong and grossly negligent. The Department of Corrections and its agents displayed behavior undistinguishable from those they are deemed to look after.

Now the fact that Kelley was told by an official alone does not carry much merit in this particular argument, or the fact that Kelley was not told by others officials, because it is said in *Bonebrake v. Norris 417 F.3d 938* "only the most egregious official conduct can be said to be arbitrary." The Court later explained a standard in *"County of Sacramento v. Lewis, 523 U.S. 833, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998)"* that in cases challenging executive action on substantive due process grounds, the "threshold question" is whether the behavior of the governmental officer is so egregious as to "shock the contemporary conscience." 523 U.S. at 847 n.8. The Court emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," id. at 846 (internal quotation omitted), and that the Due Process Clause prevents official abuse of governmental power as an "instrument of oppression." *Quoting Shields v. Beto, 370 F.2d 1003 (5th Cir. 1967)* It was also said "that historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property, But allowed that "mid-level fault" such as "deliberate indifference," "recklessness," or "gross negligence" could be egregious enough to "shock the conscious" in some context." *Lewis, 523 U.S. 833* For the State of Indiana or any state to allow its agents to display

this kind or any kind of deliberate indifference, this kind of behavior, is in fact egregious and would shock the conscious of any mind. A parole agent's duty is not to cover ones tracks or to simply lock somebody up but to instruct, to ensure the given rules are being followed, but more importantly to lead by example, "action reflects leadership."

It is clear that to abide the *Lewis* standard of "shock the conscious" simply breaking the rules or an Agent that simply forgets to do a process that must be done, Kelley leans to Bonebrake's four (4) year delay, that was said not to amount to the twenty eight (28) year delay in Shelton v. Ciccone, it was also determined that, in those instances the actions were not done on purpose or out of neglect. In Kelley's case we can unquestionably say that it was not absentmindedness, nor was it a one-time simple mistake. Spa Whallon and Spa Ross along with Dca Leffler did in fact try to cover their tracks by putting all the blame on Kelley. Spa Whallon his action being the most egregious in attempting to totally mislead even his supervisor to a jump he was simply not doing.

It is not only "affirmatively wrong" and "grossly negligent," but also "egregious." In a manner that not only were rules not followed and/or broken or simply ignored, but also the lengths that went into, before and after to make Kelley look at fault. The absolute manipulation IDOC's Parole Division and its Agents took to make Kelley look at fault, for their own abandonment of duty. Also the extents taken to fabricate official documents to paint a very untrue picture of Kelley. Or to simply say Kelley signed documents that he did not sign or has never seen.

"The due process clause of the 14th amendment was intended to prevent the government [or its agents] from abusing its power or employing it as an instrument of oppression." *Collins v. Harker Heights 503 US 115, 117 L Ed 2d 261, 112 SCT 1061*

"Too frequently made in penal systems administration to raise any presumption of arbitrariness 'in the constitutional sense,' whenever it occurs," *Hawkins, 195 F.3d at 744* (citation

omitted), and the routine executive practice has been to remedy the error by incarcerating or re-incarcerating the offender. In light of this history, "to keep things in constitutional proportion, we would have to see . . . 'a mindless abuse of power,' or a deliberate exercise of power 'as an instrument of oppression,' or power exercised 'without any reasonable justification in the service of a legitimate governmental objective,'" before delayed incarceration would shock the conscience. Id. at 746 (quoting *Collins v. Harker Heights, 503 U.S. 115, 126, 117 L. Ed. 2d 261, 112 S. Ct. 1061 (1992), and Lewis, 523 U.S. at 846*) (internal citation and alteration omitted))." Quoting directly from *Bonebrake v Norris 417 f.3d*

Kelley did exactly what he was told to do, and for that Kelley was punished through no connivance of his own. Then a story was put together with false dates and propaganda, and now the forgery of his signature. The rules were broken and/or not followed but those who broke the rules are not doing the one attribute the parole boards truly focuses on, and that is <u>being accountable for one's own actions.</u> Kelley at this point had finished Kentucky Parole without so much as a warning given to him for a rule violation, and had only moved to Fort Wayne, Indiana so that his then Fiancé would be closer to Her personal doctor while she continued in Her fight with ovarian cancer. Kelley factually stayed in Louisville 7 months while working after the completion of parole. These actions led by Indiana's parole Division Agents, have in fact made a Man that was trying to get his life back together feel as if even though following all the rules one cannot live down his past, even when he comes home and does the right things not once but constantly as a rehabilitated person should, Kelley also feels that the rules do not apply to those who make them or the one's taxed with enforcing them. Power is the real key.

It is clear Indiana Parole and its Agents, did not follow any mandated rules regarding Interstate Compact Rules and Procedures or dealing with the Department of Corrections Policy

and Administrative Procedures. Thereby violating Kelley's 5th & 14th Amendment Rights by not including Kelley's Parole agreement in any of the Interstate Compacts sent to Hawaii, by not securing an Interstate Compact to Kentucky when Kelley was ultimately released in that state, then allowing its agents to falsify documents, and create propaganda, in this way making it seem Kelley was an absconder in direct violation of his parole, when in fact Kelley did everything as he was instructed by Indiana and Kentucky Parole. Indiana Parole Division did in fact violate Kelley's due process rights guaranteed by the 5th & 14th Amendments.

## Spa Jack Ross:

On November 5th 2015 Spa Ross entered into the offender case management system (exhibit 3A &3B):

> *"Agent spoke with Spa Whallon about the whereabouts of Mr. Kelley. Spa Whallon said that Mr. Kelley was on parole in Kentucky and that Kentucky would not allow him to come to Indiana. Agent checked ICOTS and noticed that two transfer to Hawaii had been denied. Agent checked the KY KOOL system and did not locate Mr. Kelley in the system. Agent will investigate the situation."*

Spa Ross stated 1) that "Agent checked the ICOTS and noticed that two transfer request to Hawaii had been denied" Spa Ross did not at this time say that he saw on ICOTS a pending transfer between Kentucky and Indiana, or any pending transfers for that matter, and 2) that "Agent will investigate the situation." On December 1st 2015 Spa Ross entered into what is only headed "INITIAL" (exhibit 2A):

> *"In RULE #10 Failure to report as instructed – This Agent took over SOMM caseload officially on 10/1/2015 for PD9. At that time, Agent was told that Mr. Kelley was on parole in Kentucky and was not permitted to come to Indiana until his*

*Kentucky Parole was completed. A string of emails was obtained from SPA Sams showing that she was in contact with the Interstate Compact designee at the Clark County Jail.*

*Mr. Kelley was released from Indiana DOC on 1/30/14 and picked up by Kentucky Authorities to serve DOC time in Kentucky. He was due for release on 1/2/2015 and should have been on Kentucky parole. IT is not clear what happened with the Kentucky parole, but Agent received a hit notification on 11/24/2015 that showed that Mr. Kelley to be in Fort Wayne Indiana. After investigating the hit notification, it was learned that Mr. Kelley registered with the sex offender registry on or about 4/1/2015.*

*Agent cannot find any information showing that Mr. Kelley was approved to come to Indiana through the Kentucky Interstate compact. At this time Mr. Kelley neither contacted this Agent, or his previous agent, Spa Charles Whallon."*

Spa Ross stated that he investigated, and after this alleged investigation, he came to find out that 1) Kelley was not allowed to come to Indiana through the Kentucky Interstate Compact and 2) that his investigation also led him to see that Kelley registered on or about April 1st 2015. Both of these claims made by Spa Ross are in fact maliciously false. Had Spa Ross did even a cursory investigation it would have shown, 1) that Kelley did not register on or about April 1st 2015, that Kelley in fact registered on November 16th 2015. A date that is neither on nor around April 1st 2015. Kelley obtained his original registration date by simply writing a Detective Jeff Shimkus of the Allen County Sheriff's Office. On December 12th 2016 Det. Shimkus wrote Kelley back and enclosed a detailed copy of his actual registration date, at that time Kelley was incarcerated at New Castle Correctional Complex (exhibits 4A, 4B). These facts was easily obtained and actually speaks volumes to the alleged investigation that Spa Ross said took place, this absolute abuse of authority led to Kelley being called an absconder leading his superiors to believe that Kelley had actually been avoiding parole since April 1, 2015. If Kelley had in fact been a absconder and his

intentions were to avoid Parole and law enforcement, Kelley would not have walked in and registered at the Sheriff's office, or moved when the Sheriff told him his address was not good, and 2) Spa Ross stated He checked the ICOTS system, had Spa Ross in fact done this He would have undoubtedly seen that there was no ICOTS ever put for an Interstate Compact from Kentucky to Indiana or vice-versa, at that time, also that there was none pending, either to Hawaii or an Kentucky/Indiana Interstate Compact. So how did Spa Ross state in an Official Document that he could see nowhere Kelley was allowed to come to Indiana through the Kentucky/Indiana Compact. Spa Ross's misrepresentations continued from that document *"Initial"* to another that was sent directly to the parole board a state form entitled *"Transmittal-Parole Board Action"*[2] (Exhibit 2B) When Spa Ross decided to falsely say that Kelley registered on or about 4/1/15, and that Kelley had a Kentucky/Indiana interstate compact, Spa Ross did in fact falsify an official state document, to serve a purpose outside the scope of professional integrity. The State of Indiana's Policy and Administrative Procedures: Information and Standards of Conduct for Departmental Staff: #04-03-103 states in Section 9 "Standards of Conduct" in subsection Q (pg32): *"Information, Records, and Documents"*:

> *"Staff is not to engage or attempt to engage or to allow another person to engage or attempt to engage in the following conduct...Falsifying, forging or otherwise disposing of, tampering with, or altering information, records, or documents of the department, a staff person, an offender, a member of the public, and/or state."*

To say in an official report that Spa Ross in fact did the investigations is the very definition of Nonfeasance. Ballentine's Law Dictionary defines it as:

---

[2] State Form numbers are not legible on this document.

*"The failure to act where duty requires an act. Of public officer: -- neglect or refusal, without sufficient excuse, to do that which it is the officer's legal duty to do, whether willfully, or through malice, ignorance, or oversight[or]the total omission or failure of an agent to enter upon the performance of some distinct duty or undertaking which he has agreed with his principal to do."*

Spa Ross did in fact display the actions associated with nonfeasance. It is quite impossible to do exactly as Spa Ross said he done and come back with the results he came back with. Spa Ross observed the nonfeasance and gross negligence in his predecessor, Charles Whallon. Spa Ross attempted to cover up those acts instead of reporting them to his superiors. While engaging in this behavior Spa Ross did in fact use Gross Negligence. Defined by Ballentine's Law Dictionary as:

*"Negligence characterized by the want of even slight care. Acting, or omitting to act in a situation where there is a duty to act, not inadvertently but willfully and intentionally with a conscious indifference to consequences so far as other persons may be affected."*

Spa Ross cared only for covering up his colleague's recklessness and did not care for the outcome or what it robbed Kelley of, which was his freedom.

Again Spa Ross new that there wasn't any Interstate compact after checking in November as he stated but continually stated there was one. There was no interstate compact after the denied compact on March 10th 2015. While viewing ICOTS this is something that would be shown. Spa Ross attempted to mislead the parole board and any other person(s) that was to read his parole case notes of Kelley. Not at all caring for Kelley or any misfortune that would befall Kelley do to his lack of following procedure. Spa Ross in another document titled *"Case Note"* Spa Ross stated:

*"DS Harrison advised to use the Registry start date on the Allen County Sex Offender website as a delinquency date."*

Spa Ross stated that he had conducted some form of an investigation in his notes and transmittal to the parole board, when in fact he did not, Spa ross was only told to use the registration start date, which we know as fact he did not investigate, because he listed it previously as April 1, 2015, instead of it real and true date which is November 16, 2015. This fact should not go unnoticed.

Spa Ross intended to make it seem as if Kelley absconded from his parole, observing that his parole was over April 27th 2015, Spa Ross handpicked a date (4-1-15) to accommodate his defamatory story. Then completed the proper documents to show this misrepresentation knowing that a convicted felon's voice is heard little if at all.

Spa Ross's Negligence and Misfeasance, in his attempts to cover up what was absolutely a derelict of duty by his predecessor Spa Whallon are in fact the reasons Kelley was said to have been a absconder to the Fort Wayne parole division and put on "last chance parole" a designation Kelley should never have had to endure, in actuality Kelley should have never been placed back on parole after being released by Kentucky, because of the negligent work by former Spa Whallon.

It is clear upon the face of fact that Spa Ross did not investigate as he said he did, every fact he alleged in his case notes and other documents can all be factually repudiated, making them indeed fraudulent. Spa. Ross was grossly negligent in his duties and toward Kelley. Spa Ross did not care if Kelley went back to prison unjustly, so much as long as he and his office were in the clear of the true facts, the negligence of his predecessor. There was no interstate compact nor had one even been attempted by Indiana or Kentucky. Again violating Kelley 5th & 14th Amendment rights.

## Former Spa Charles Whallon:

Charles Whallon In "Parole Case Notes" showing activity date 07-APR-15 thru 25-AUG-15 (exhibit 3A & 3B). Spa Whallon stated:

*"Subject remains on parole in Kentucky awaiting a response on ICOTS transfer"*

The first time this statement was made was in April 7th 2015, and this in fact was the only true statement made by Spa Whallon in the aforementioned Parole Case Notes. Spa Whallon continued to make this statement again on May 8th 2015, June 8th 2015, and July 9th 2015, August 11th 2015, and August 25th 2015 this being a *"self-audit"* and also being the last time Spa Whallon made an entry into the Department of Corrections Offender Management System. Spa Whallon did in fact falsify statements, not just for one particular month but continued falsifying his statements consistently on official state documents for several months. The State of Indiana's Policy and Administrative Procedures: Information and Standards of Conduct for Departmental Staff: #04-03-103- states in Section 9 "Standards of Conduct" in Subsection M (pg.30)

*"Reporting - staff shall submit <u>TRUE, ACCURATE</u>, legible and appropriate reports in a timely manner when required to do so by department policies/procedures or by supervisory staff. Staff shall not knowingly or intentionally enter or cause to be entered any inaccurate, false, or improper information into any department books, records, reports, or document."*

After Spa Whallon's entry on April 7th 2015, He continued to report that Kelley was still on parole and awaiting an ICOTS. Kelley had been released from Parole by his Kentucky Parole officer (Kate Greer), by the time Spa Whallon's next entry May 8th 2015 had been entered. Spa Whallon 1) was not in contact with Kentucky Parole at all during any of these entries, and even if there had been an ICOTS Spa Whallon did not follow even one of the ICAOS rules. To which they

leave no question to what needs to done regarding the word *"SHALL"* when in use with the Interstate Compact for Adult Supervision Rules (ICAOS).

Spa Whallon was not in contact with Kentucky at any point of the dates listed otherwise there is no likely way Kentucky Parole i.e. Kate Greer, would not have told him that Kelley had been released April 27th 2015, and that since there wasn't any Interstate Compact between the two states Kentucky had exercised its authority in releasing Kelley.

Spa Whallon knew there wasn't any Interstate Compact pending after the denied one to Hawaii March 10th 2015, because he had not initiated another one. On August 25th 2015 Spa Whallon even went through the lengths to complete a "self-audit," to further along his misleading entries of an Interstate compact being submitted (exhibit 3B). Spa Whallon simply ignored his obligation to Indiana Probation and Parole as a Parole Officer. ICAOS Rule 4.106: *Progress reports on offender compliance and non-compliance states:*

> *"(a) A receiving state shall submit a progress report to the sending state within 30 calendar days of receiving a request...*
> *(c) A progress report shall include-...*
> *(4) supervising officer's summary of offender's conduct, progress and attitude, and compliance with conditions of supervision...*
> *(8) supervising officer's recommendation; and*
> *(9) any other information requested by the sending state that is available in the receiving state."*

Spa Whallon did not have any intentions to follow any rules, even if Kelley did have an interstate compact. Spa Whallon used his position as a Parole Officer in a negligent and capricious manner.

Spa Whallon did in fact use gross negligence against Kelley by intentionally submitting false official state documents i.e. Parole Case Notes, to appear as if he was doing his job, and also deliberately disregarding all the rules set forth by probation and parole and the ICAOS rules. Spa Whallon did this with a total indifference to how it would affect Kelley. Once again violating his 5th & 14th Amendment rights guaranteed by the Constitution of the United States of America. Leaving Kelley with serious questions as; Why should I follow rules, if those who are mandated over me, that are charged with my rehabilitation are simply going to break the rules to fit whatever scheme they seem to have, and I am going to get into trouble anyway?

## Former Dca Ronald Leffler:

A string of emails was obtained by Kelley revealing that on December 30, 2014 the former Deputy Compact Administrator & Extradition Coordinator, Ronald J. Leffler was in contact with Spa Whallon (exhibits 5A & 5B).

These emails stated on December 30, 2014 at 9:52 a.m.

**From Dca Leffler:** *"...Clyde Kelley is scheduled to be released from Luther Luckett Correction Complex in LaGrange, KY to a halfway house in Louisville, KY on 01-02-15...He will be on parole in KY residing at St. Patrick's of Louisville...his mother resides in Hawaii and would like for him to come there"*

The response sent on December 30, 2014 at 12:53 p.m.

**From Spa Whallon:** *"Seems like a mess...does this guy know that I have never successfully gotten an ICOTS Approved?"*

The response sent on December 30, 2014 (no time stamp)

Page **23** of **30**

**From Dca. Leffler**: *"You are right it is a mess. I tried to work it through before letting everyone know about it."*

(Exhibits 5A & 5B)

Dca Leffler and Spa Whallon had sufficient time and opportunity to secure or even start an Interstate Compact between Hawaii and Kentucky, and do this correctly. Knowing that I would be getting released in Kentucky and still be on parole out of the state of Indiana. Dca Leffler and Spa Whallon assumed that they could forgo putting in an interstate compact because I wanted to go to Hawaii, and in fact if that interstate compact went through as they planned then the Kentucky would not be needed.  This fact is stated in the email, and is subsequently answered by Dca Leffler: *"You are right it is a mess. I tried to work it through before letting anyone know."* The ICAOS has set rules and procedures to be followed in these instances, including but not limited to ICAOS Rule 3.103: *Reporting Instructions; Offender Living in the Receiving State at the Time of Sentencing or after Disposition of a Violation or Revocation Proceeding*:

> *(a)(1)"A request for reporting instructions for an offender who was living in the receiving state at the time of initial sentencing or after disposition of a violation or revocation proceeding shall be submitted by the sending state within 7 business days of the initial sentencing date, disposition of violation, revocation proceeding or release from incarceration to probation[parole] supervision."*

Or ICAOS Rule 3.105: *Pre-Release Transfer Request:*

> *(a)A sending state may submit a completed request for transfer of supervision no earlier than 120 days calendar days prior to an offender's planned release from a correctional facility.*

It is clear that neither of these rules were adhered to. Kelley went to parole 60 days before his actually release date per policy in Kentucky Corrections. This allows for a better and appropriate time to establish a re-entry plan i.e. home placement, jobs, etc. Kelley as stated before,

Page **24** of **30**

made it known as recognized in the emails that he felt the best opportunity to not recidivate would be his re-entry to Hawaii and start over with his mother, given the time he had done. Spa Whallon never even attempted to put in an interstate compact, although he stated in his email to Dca Leffler that he "*never successfully gotten an ICOTS approved.*" Dca Leffler understood the Rules, Policy and Procedures and simply tried to cover up his, and his offices (District 9) shortcomings, by "*trying to work it through before letting anyone know about it.*"

Dca Leffler knew that there was no attempted Interstate Compacts between any state and the State of Indiana referring to or dealing with Clyde Kelley before 2017. Yet He allowed his subordinates to falsely state that there was one. By choosing not to follow any of the procedures and rules set forth in ICAOS policy or even the Ethics Code stated in the Department of Corrections. As it states in IDOC's Policy and Administrative Procedures: Information and Standards of Conduct for Departmental Staff: #04-03-103 Page 7, VI Code of Ethics:

> "*As positions with state service are a public trust, staff is to serve the public efficiently and effectively, Consistent with applicable laws and State and/or Department standards, rules, regulations, policies, procedures, directives, written or verbal orders, agreements, responsibilities, or conditions or employment. A staff person shall be aware of and comply with the States Ethics Code... This code ensures that professionalism is reflected in the operation and activities of the Department and its staff...*"

In accordance here are several that were disregarded and/or overlooked:

A. "*I shall maintain high standards of honesty, integrity and impartiality free from any personal considerations, favoritism or partisan demands in connection with my duties.*"

D. *"I shall be firm, fair and consistent in the performance of my duties and shall not allow my personal convictions, beliefs, prejudices, or biases to interfere with my official acts or decisions."*

E. *"I shall up hold the provisions of the United States Constitution, the Constitution of the State of Indiana, Federal and state laws, rules and regulations and the policies and procedures of the Department."*

F. *"I shall conduct myself, whether on-duty or off duty, in a manner that will not bring dishonor or disrepute to the Department or the State of Indiana."*

L. *I shall report any corrupt or unethical behavior that could impact upon the operation of the Department."*

Clearly this was not done by Dca Leffler or any of his Colleagues i.e. Spa Ross or Spa Whallon. It is telling in the emails that Dca Leffler knew about Kelley's intent to get an Interstate compact also Dca Leffler knew that Spa Whallon had not even attempted one, and knew that things were a *"mess"* and yet instead of telling anyone to right the wrongs or mistakes made, instead *"tried to work it through before letting everyone know about it."* It is clear of Dca Leffler's intent. To mislead his department and to cover up any and all mistakes or shortcomings of Spa Whallon. This being an absolute derelict of his duty, as Deputy Compact Administrator and Extradition Coordinator. In doing this Dca Leffler did in fact use culpable negligence, and nonfeasance in the operation of his duty, and by utilization Dca Leffler did in fact observe gross negligence.

## CONCLUSION

Kelley should have been released from his Parole obligation for his 2001 crime as he was in 2015 by Kentucky lawfully and should not have had to endure 15 months of prison, having to pay various parole fees, and be subjected to countless Misrepresentations against him, with nothing to claim to his defense but his word against those who were to be a guiding light to him.

Through NO connivance of his own and the lack of dutiful and honest work the Indiana Parole Office did violate Kelley's 5th & 14th Amendment Rights.

Kelley is not guaranteed an interstate compact, but he is guaranteed that when the entering into one begins policy and rules are followed, the actions before the interstate compact and ultimately the Parole agents are in fact governed by these rules and policies, those policies and rules protect officer as well as offender alike, and are supposed to show a positive reinforcement an *"action reflects leadership,"* but when those with the authority go out of their was to manipulate the procedure to benefit them at the expense of another they should be held accountable for their actions, and not be able to just throw it to somebody trying to get their life together simply because they can.

The Indiana Parole Services represented by its agents: former Dca. Ronald Leffler, former Spa. Charles Whallon, Spa Jack Ross, former Director Doug Huyvaret did attempt cover-up and lay the blame of their actions and/or inactions on Kelley utilizing methods such as: Libel, Deceit, Slander, Forgery, and Defamation. Their actions ultimately being defined as gross negligence, culpable negligence, and misfeasance.

The evidence listed in this complaint along with the enclosed documents outline this egregious, and despicable behavior, by Agents of the Indiana Parole Services Department.

## V. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment? ☒Yes ☐No.

If your answer is "Yes," describe each lawsuit. (If there is more than one lawsuit, describe the additional lawsuits using this same format on a blank sheet which you should label "V. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF.")

a. Parties to previous lawsuit:

Plaintiff(s): **Clyde N. Kelley III**

Defendant(s): **Indiana Parole Board (Parole Services Division) Doug Huyvaret, Jack Ross, Charles Whallon, Ronald Leffler**

b. Name and location of court and docket number: **Sullivan County Circuit Court,**

**Cause No. 77C01-2001-MI000025, Honorable Judge Robert E. Hunley, II**

c. Disposition of lawsuit. Still pending. Supreme Court Transfer, initial issue raised was a Habeas Petition for parole. Issue raised on transfer is the trial court, nor Defendants never sent and/or Plaintiff never received court documents stating that defendant entered in a summary disposition, thereby not allowing him to rebuttal or refute summary disposition. CCS reflects positively to Plaintiff's claim, as well as incoming legal Mail logs in the institution. Plaintiff can get no assistance from the court and has been getting blackballed from the onset of litigation. Kelley feels that this complaint in District Court is a separate issue from the Habeas petition, and would like this to be looked at in its own light.

d. Issues raised: **State Habeas Corpus Petition**

e. Approximate date of filing lawsuit: **January 17, 2020** (Filed in Sullivan Circuit Court)

f. Approximate date of disposition: **April 20, 2020** (without notice)

2. I have previously exhausted available administrative remedies regarding the events or acts Complained of in Part II of this complaint. ☒Yes ☐No

If your answer is "Yes", briefly describe how relief was sought and the result: Issue is still pending according to the Habeas Petition.

## "VI. PREVIOUSLY DISMISSED ACTIONS OR APPEALS." ☐Yes ☒No

a. Parties to previous lawsuit:

Plaintiff(s): none

Defendant(s): _____

b. Name and location of court and docket number: _____

c.    Grounds for dismissal: none.

☐Frivolous ☐malicious ☐failure to state a claim upon which relief may be granted

d.    Approximate date of filing lawsuit: _____

e.    Approximate date of disposition: _____

## Plaintiff Demands a Trial by Jury. ☒Yes ☐No

## VII. REQUEST FOR RELIEF

1.  Kelley would ask this court to hold accountable the Defendant(s) in any manner which it deems absolute and necessary for the derogatory behavior.

2.  Kelley would ask the court to rule in injunctive relief stating that IDOC's Parole Services Department update their individual policy and also hold those agents that do not follow their policy and procedures accountable, with set guidelines.

3.  Kelley would ask the court to hold IDOC responsible for their actions and/or inaction in the form of a formal apology to Kelley, whether it be in person or through correspondence.

4.  Kelley would ask the court for Nominal Damages for the 15 months of lost wages Kelley underwent, at a total of Fifty-Six Thousand One Hundred and Sixty Dollars ($56,160.00)

5.  Kelley would ask the court for Punitive Damages for the dereliction of duty by the Indiana Parole Services Department being represented by the above mentioned Defendant(s) and their actions being grossly negligent there-by causing undue stress to Kelley's then wife (Sanitra Brown), causing the loss of Kelley's unborn child do to a Heart Attack, also the dissolution of Kelley's marriage, being arrested only days after he was married. For the continued misrepresentations of Kelley's character, and the absolute lies told by the Defendants. Kelley would ask for the amount of One Hundred-Twelve Thousand Three

Hundred and Twenty Dollars ($112,320.00). With a grand total combining, nominal and punitive damages being: One Hundred and Sixty Eight Thousand Four Hundred and Eighty Dollars ($168,480.00).

_____
Original signature of attorney (if any)

Plaintiff's Original Signature

Date: 6-10-21

Plaintiff's Printed Name

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in the complaint is **True and Accurate.**

Executed at Branchville Correctional Facility on June 10, 2021.

**Plaintiff's Original Signature**